CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

APR 12 2016

JULIA C. DUDLEY, CLERK
BY: /s/ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ABDUL-HAMZA WALI MUHAMMAD, | ) | CASE NO. 7:16CV00034 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| DR. HAPPY EARL SMITH, ET AL., | ) | |
| | ) | By: Glen E. Conrad |
| Defendant(s). | ) | Chief United States District Judge |

In a prior civil action, Case No. 7:15CV00541,[1] Abdul-Hamaz Wali Muhammad, a Virginia inmate proceeding pro se, filed two motions for preliminary injunctive relief, related to medical care provided by Dr. Happy Smith at Red Onion State Prison in October and November 2015. Finding that these motions were not properly raised in that pending case, the court directed that they be docketed as this new and separate civil action, both as a motion for interlocutory relief and as a complaint under 42 U.S.C. § 1983 seeking such relief.

Rather than allowing the court to address his requests for interlocutory relief in an expedited manner, Muhammad proceeded to flood the court with additional pleadings and hundreds of pages of what he generally identifies as "documentary evidence," without any self-evident or stated connection to his initial motions. These submissions have substantially complicated resolution of Muhammad's original concerns.[2] Specifically, since this case opened, Muhammad has filed: an amended complaint; dozens of separately submitted, two-page "affidavits" on an unofficial form, each lacking an individual exhibit label or reference to any

---

[1] By opinion and order entered February 16, 2016, the court summarily dismissed the complaint in Case No. 7:15CV00541 without prejudice, based on findings that each of the misjoined claims in that action was factually or legally frivolous. See 28 U.S.C. § 1915A(b)(1).

[2] Muhammad's multiple submissions also fail to comply with basic formatting rerquirements. He persists in leaving minimal or no white space margin at the sides and bottom of his written text and puts multiple case numbers within the same document. These unacceptable practices create unnecessary difficulties for the deputy clerks, who must scan the documents into the court's electronic filing system and attempt to determine how to docket them appropriately.

particular claim in the amended complaint, with many of them merely restating descriptions of events already described in earlier affidavits; an additional motion for interlocutory relief (ECF No. 10); additional argument and documentation (ECF Nos. 23-25, 28), purportedly in support of the need for interlocutory relief, based on several later events not mentioned at all in the amended complaint; and two motions to amend to drop two claims from the amended complaint (ECF Nos. 26 and 29). After review of Muhammad's motions and voluminous materials, the court finds no basis for interlocutory injunctive relief. The court also concludes that the motions to amend to drop two claims will be granted, but that the complaint as amended must be summarily dismissed without prejudice, with leave to submit an amended complaint only as to one claim against Dr. Smith.

I.

Muhammad's initial pleadings in this case concerned only certain decisions and actions by Dr. Smith related to Muhammad's course of medical care at Red Onion. Specifically, Muhammad alleged that in response to his repeated complaints of seeing blood in his stools, Dr. Smith performed two rectal examinations on November 3 and 19, 2015, to check Muhammad for problems with his prostate or with hemorrhoids. Muhammad asserts that he did not consent to either of these rectal examinations and characterizes them as sexual assaults. Based on these "assaults" and his alleged fear that Dr. Smith would subject him to additional such assaults in the future, Muhammad filed his motions for interlocutory injunctive relief, seeking an order for his transfer away from Red Onion.[3]

---

[3] In later filings, Muhammad lists other, more specific interlocutory relief to which he believes he is entitled, including orders directing the medical staff to provide particular treatments or evaluations; directing officials to move him out of segregated confinement; and requiring defendants to admit their violations of his constitutional rights and agree to pay him monetary damages. His primary request for interlocutory relief, however, appears to be a transfer to a prison nearer to his family home in Washington, D.C.

Muhammad's later submissions and motions for preliminary injunction add allegations about unconnected events in December 2015 and early 2016, apparently as additional bases for interlocutory relief. The court will only briefly summarize a few of these later concerns here.[4] Officials allegedly delayed investigating Muhammad's complaints against Dr. Smith under the Prison Rape Elimination Act ("PREA"), regarding the November rectal exams. Dr. Smith refused Muhammad's requests to see a gastroenterologist or to be scheduled for a colonoscopy to determine the cause of the alleged blood in his stools. X-rays Dr. Smith ordered of Muhammad's knee, lower back, and abdomen were delayed. After a consulting neurologist recommended Neurontin and magnesium oxide for treatment of Muhammad's migraine headaches, Dr. Smith refused to provide these medications, because Muhammad refused to sign a consent form, stating that he was aware of potential adverse side effects. Because bright light aggravates Muhammad's migraines, Optometrist Owens promised to order the maximum amount of gray tint for Muhammad's next pair of eyeglasses; instead, Owens ordered a lesser amount of tint than Muhammad believes is the maximum. Officer Murphy has repeatedly kicked Muhammad's door to wake him for evening count, despite a sign on the cell door indicating that Muhammad takes a sedative at the 4:00 p.m. pill pass.[5] After Muhammad submitted a request form describing his many mental health issues and disorders, Qualified Mental Health Professional ("QMHP") Trent stated his belief that Muhammad's recent actions might be an indication of suicidal thoughts; Trent obtained authorization to place Muhammad on suicide

---

[4] Muhammad has not filed a motion to amend to add claims concerning any of the events described in this paragraph. Moreover, his documentation about them was clearly submitted to the court long before he could have exhausted available administrative remedies. See 42 U.S.C. § 1997e(a) (requiring exhaustion of available administrative remedies before filing any court action concerning prison conditions). Therefore, the court does not consider any of these matters to be properly included in the complaint in this case. However, the court has considered the allegations, generally, as part of Muhammad's motions for interlocutory injunctive relief.

[5] Documents in the record clearly indicate that Muhammad's sedative medication does not excuse him from standing for evening count. Moreover, if he is ordered to do so and fails to comply, he may receive a disciplinary charge.

watch without access to his personal property for more than 24 hours, but then apologized for misreading Muhammad's intentions and released him early from suicide watch.

Because interlocutory injunctive relief is an extraordinary remedy, the party seeking the preliminary injunction must make a clear showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor; and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Each of these four factors must be satisfied. Id. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with" the fact that injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Id. at 22 (citation omitted). Thus, plaintiff must show more than a "possibility" of irreparable harm—rather, he must show that imminent, "irreparable injury is likely in the absence of an injunction." Id. (emphasis in original).

Muhammad has not made the four-part factual showing necessary for the extraordinary relief he seeks. First, the irreparable harm Muhammad initially alleged—that without court intervention, Dr. Smith will perform another rectal exam without Muhammad's consent—is clearly baseless. Muhammad alleges that in March 2016, Dr. Smith advised him that another rectal exam was warranted to check his prostate and hemorrhoids as possible sources of blood in his stools. When Muhammad refused this exam, Dr. Smith did not perform it. Thus, Muhammad's own allegations indicate that he is not in imminent danger of suffering irreparable harm of the sort he initially raised in this action.

Second, Muhammad's allegations also fail to support a finding that the other aspects of his course of medical treatment are so lacking as to constitute an imminent risk of irreparable

harm without court intervention. His submissions indicate that since he first began complaining about blood in his stools in late September 2015, Dr. Smith has conducted multiple stool tests and lab work, ordered X-rays, monitored him for a time in the infirmary, and provided multiple medications. Muhammad has also been evaluated by a neurologist and an optometrist for treatment of his migraine headaches, new gray-tinted eye glasses, and an offer of medications that he rejected for his own reasons. The mental health staff have monitored his mental health issues and taken measures they believed appropriate, based on his behavior and words. Muhammad's dissatisfaction with the professional decisions of his medical and mental health providers is not sufficient grounds for this court to find that their actions have placed him in imminent danger of irreparable harm.

Third, Muhammad's allegations about his mere disagreement with medical judgments is also insufficient to show a substantial likelihood of success on the merits of any underlying claims about his medical care. Only a prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. See Estelle v. Gamble, 429 U.S. 97, 102 (1976). To act with deliberate indifference, an official must have been personally aware of facts indicating a substantial risk of serious harm, recognized the existence of such risk, and responded unreasonably. Farmer v. Brennan, 511 U.S. 825, 838 (1994). The deliberate indifference standard "is not satisfied by . . . mere disagreement concerning '[q]uestions of medical judgment.'" Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013); Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) (finding that in constitutional claim regarding course of treatment for inmate's medical needs, "the essential test is one of medical necessity and not simply that which may be considered merely desirable"). Doctors may not be liable under § 1983 for negligent diagnostic or treatment decisions. Johnson v. Quinones, 145 F.3d 164, 168-69 (4th

Cir. 1998) (granting summary judgment where doctor provided diagnosis and treatment, but did not diagnose or treat pituitary gland tumor that ultimately blinded the prisoner plaintiff).

Finally, the court cannot find that prison budgetary needs or the public interest will be served by granting the immediate injunctive relief Muhammad seeks. As Muhammad has failed to make the necessary factual showings for interlocutory injunctive relief of any kind, his motions for such relief will be denied.

## II.

In his amended complaint (ECF No. 10),[6] Muhammad raises two, overlapping claims: (1) Dr. Smith has provided deficient medical care related to complaints of bloody stools that began on September 28, 2015; and (2) Dr. Smith did not provide him any treatment after medical staff reported on November 10, 2015, that past stool samples had been positive for blood.[7] Muhammad also alleges that Defendants Phipps, Hamilton, and Schillings somehow violated his constitutional rights by ruling that his grievances and appeals about these matters were unfounded. After review of these claims, Muhammad's initial submissions in the case, and his dozens of later filings, the court concludes that the amended complaint must be dismissed without prejudice for failure to state any actionable claim against anyone. The court will, however, allow Muhammad leave to file a second amended complaint regarding his claim

---

[6] The amended complaint names the following officials as defendants: Dr. Smith, Medical Administrator Victoria Phipps, Virginia Department of Corrections Health Services Director Fred Schillings, Red Onion Warden Earl R. Barksdale, Assistant Warden Israel D. Hamilton, Major Delmar Lynwood Tate, Capt. David Still, Lt. Garry A. Adams, C. A. Murphy, J. S. Lovell, and Disciplinary Hearings Officer Larry A. Mullins.

[7] In the amended complaint, Muhammad raised two additional claims: (3) Officer Murphy retaliated against Muhammad by kicking his cell door to awaken him for evening count procedures; and (4) Officer Lovell falsely charged Muhammad with making verbal threats to throw feces on officers. In his recent motions to amend, however, Muhammad asks that he be allowed to voluntarily dismiss Claims (3) and (4) from this action. His motions will be granted.

concerning the course of treatment Dr. Smith has provided in response to Muhammad's complaints of bloody stools from October 2015 through March 2016.

Under 28 U.S.C. § 1915A(b)(1), when a prisoner sues government officials, the court must screen the complaint and summarily dismiss it as soon as practicable if it is frivolous, malicious, or fails to state a claim. Stating a claim requires that plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Therefore, a plaintiff must "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003).

To state a § 1983 claim, a plaintiff must allege facts showing that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). The two remaining claims in the amended complaint do not mention any actions undertaken by the following defendants in violation of Muhammad's rights: Mullins, Lovell, Murphy, Adams, Still, Tate, and Barksdale. Therefore, the complaint will be summarily dismissed under § 1915A(b)(1) as to all claims against these individuals.

The amended complaint also fails to state any actionable claim against Defendants Phipps, Hamilton, or Schillings. Muhammad alleges that he told these defendants through his grievances and appeals about Dr. Smith's allegedly inadequate treatment decisions regarding his complaints of bloody stools, but defendants took no action to correct Dr. Smith's mistakes. Such administrative prison officials evince deliberate indifference only by acting intentionally to delay or deny the prisoner access to medical care or by interfering with prescribed treatment. Estelle, 429 U.S. at 104-05. Muhammad makes no such allegation against any of these defendants. Such

officials "cannot be liable for the medical staff's diagnostic decisions." Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002). These administrators are entitled to rely on the medical judgment and expertise of the medical professionals charged with providing care to Muhammad. See Shakka v. Smith, 71 F.3d 162, 167 (4th Cir.1995) (citing Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990) (overruled on other grounds by Farmer v. Brennan, 511 U.S. 825 (1994)). It is not the function of the court, or prison administrators, to second guess the good faith treatment decisions of licensed physicians. Id. Therefore, the court will summarily dismiss the complaint under § 1915A(b)(1) as to Defendants Phipps, Hamilton, and Schillings.

Finally, construing Muhammad's many submissions liberally in the aggregate, the court concludes that Muhammad may be able to present facts that might support some actionable § 1983 claim against Dr. Smith related to treatment of the bloody stool complaints. The amended complaint itself, however, does not succeed in doing so, as it fails to provide a chronological, coherent statement of facts about the particular actions by Dr. Smith for which Muhammad is suing him under § 1983. The court will not require the defendant to comb for such facts through Muhammad's many other repetitive, often unrelated submissions in this action so far. Accordingly, the court will dismiss the amended complaint as to Dr. Smith without prejudice. By separate order, the court will provide a specific schedule and format for Muhammad to submit a second amended complaint of his claims against this defendant related only to Muhammad's complaints about bloody stools from October 2015 through March 2016.

An appropriate order will issue this day. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 12th day of April, 2016.

_____
Chief United States District Judge