CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 03 2016

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| ABDUL-HAMZA WALI MUHAMMAD, | ) | CASE NO. 7:16CV00034 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| DR. HAPPY EARL SMITH, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Abdul-Hamza Wali Muhammad, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that the defendant, a prison doctor, used excessive force and/or sexually assaulted him during rectal examinations and denied him adequate medical care related to his complaints of bloody stools. After review of the record, the court concludes that defendant's motion to dismiss must be granted, plaintiff's motion for summary judgment must be denied, and all other claims, added through amendment, must be summarily dismissed.

I.

Muhammad is incarcerated at Red Onion State Prison ("Red Onion"). The matter is now before the court on Muhammad's second amended complaint and a motion to dismiss by the defendant, Dr. Earl "Happy" Smith.[1] Muhammad responded to this motion by filing a document titled "cross motion for summary judgment" and numerous documents and two-page affidavits.[2] In this motion, Muhammad also moves for voluntary dismissal of his excessive force/sexual

---

[1] By opinion and order entered April 12, 2016, the court dismissed Muhammad's prior complaints as to all but one defendant, Dr. Smith, and directed Muhammad to file a second amended complaint as to his claims against only this defendant. Muhammad did so. (See ECF No. 34.)

[2] The court notes that Muhammad's documents include several Virginia state court witness subpoena forms and subpoena deuces tecum forms. Such forms have no relationship to a lawsuit in federal court. Moreover, subpoenas are served on the witness or the custodian of the desired documents, rather than being filed with the court, as Muhammad has done. To the extent that Muhammad is attempting to request leave to engage in discovery by submitting these subpoena forms, his request must be denied. Because a motion to dismiss tests the sufficiency of the complaint, requests for discovery are premature.

assault claims and seeks to add new defendants and claims related to his medical treatment for bloody stools at Red Onion. The court will allow this dismissal and amendment.

Liberally construed, Muhammad's allegations, exhibits, and amendments offer the following sequence of events related to his claims. Muhammad's submitted medical records from 2015 indicate that he suffers from chronic constipation and lactose intolerance, in addition to other medical concerns. He first complained about seeing blood in his feces in early October 2015. On four occasions, appointments scheduled for Muhammad to see the prison doctor in October were cancelled. Muhammad was brought to the medical unit on November 3, 2015, for a prostate and hemorrhoidal examination to which Muhammad allegedly did not consent. Dr. Smith explained that the purpose of this rectal exam was to check for blood in the "anallingus cavity canal" (Am. Compl. 2, ECF No. 34.) Muhammad reported that he was not bleeding from the rectum, but had been seeing a moderate amount of blood in his fecal matter. A stool sample was taken, and he returned to his cell. The stool sample Muhammad provided tested positive for blood.

Dr. Smith examined Muhammad again on November 10. Muhammad showed the doctor an article about an inmate with similar symptoms who had been diagnosed with stage three colon cancer. Based on the article, Muhammad asked for referral to a gastroenterologist and a colonoscopy to diagnose the cause of his bloody stools. Dr. Smith said that he, as the primary care physician, would decide the course of treatment for Muhammad's medical issues.

Muhammad was escorted back to the medical unit on November 19 for another rectal examination to check for possible enlargement of his prostate and hemorrhoid issues. Muhammad told a medical administrator and Dr. Smith that he did not have either of these problems and wanted to sign a refusal of treatment form. Dr. Smith allegedly told Muhammad

that if he refused the rectal exam, he should stop writing complaints about having blood in his stools. After performing the rectal exam, Dr. Smith placed Muhammad in a cell in the medical unit for observation and said that the medical staff believed Muhammad was manipulating his feces for attention.

At an examination on January 12, 2016, Dr. Smith allegedly said that he would not provide treatment for Muhammad's continued complaints of blood in his stools. The doctor recognized that Muhammad had filed complaints under Prison Rape Elimination Act ("PREA") procedures, characterizing the rectal exams on November 3 and 19, 2015, as sexual assaults. Dr. Smith allegedly added, "You know that didn't happen, don't you." (Id. 5.)

In early 2016, a woman named Abigail Turner, whom Muhammad identifies as his attorney, wrote on his behalf to Dr. Mark Ammonette, an administrator for the Virginia Department of Corrections ("VDOC").[3] Turner's letter expressed concern that although Muhammad "ha[d] found blood in his feces for several months," Red Onion's "medical administrator ha[d] said no further assessments [would] take place." (ECF No. 53-1, at 62.) Dr. Ammonette responded by letter dated February 16, 2016, stating as follows, with respect to the complaint of blood stools:

> Thank you for your correspondence regarding Abdul Muhammad DOC#1005782. I have spoken to his treating Physician at Red Onion . . . and have also reviewed limited records on the offender as well as received an email from the Health Authority at the facility providing some information. Evaluation of Mr. Muhammad has shown that, while one sample provided by the offender was positive for blood, four other samples were sent for testing which showed no evidence of blood in the stool. Also, blood work was done which showed no evidence for blood loss and screening lab tests for some causes of rectal bleeding were negative. Based on these findings, Dr. Happy Smith, Mr. Muhammad's treating Physician at the facility, does not feel that further work-up is indicated at this time. He will follow Mr. Muhammad clinically and if it appears in the future

---

[3] This undated letter, attached to Muhammad's motion for summary judgment, is typed on stationery of the Legal Aid Justice Center of Charlottesville by Abigail Turner, "Of Counsel." (ECF No. 53-1, at 62.)

that Mr. Muhammad's complaint does warrant further work-up Dr. Smith will
refer him for additional appropriate consultation and/or evaluation. . . .

(ECF No. 53-1, at 63.) Dr. Ammonette also indicated, "I cannot 'order' a physician to render specific treatment to an offender/patient. Our Physicians are trained and licensed practitioners who render care based on their own evaluation and medical judgment and, while I may discuss cases with our Physicians, I cannot tell them what to do." (Id.)

Muhammad was escorted to the medical unit on March 10, 2016, where he learned that Dr. Smith intended to perform another rectal examination. Muhammad refused this exam, reminded the doctor that both previous rectal exams had showed negative results, and asked if the doctor would refer him to a gastroenterologist to diagnose the cause of his continued problem with bloody stools. Dr. Smith sent Muhammad back to his cell without performing the rectal exam.

On March 29, Muhammad had an appointment with Dr. Smith, who prescribed high fiber packets for treating constipation. (ECF No. 53-1, at 9.) When Muhammad tried to talk, Dr. Smith allegedly said, "I am not going to have you having your lawyer contact my boss, Mark Ammonette on me," and told Muhammad that if he said one more word, the appointment was over. (Id. 6.) Dr. Smith allegedly said, "I am not going to do anything about your bloody stools." (Id. 7.) Muhammad allegedly said he would not ask Dr. Smith for treatment of the problem again and asked to be escorted back to his cell.

II.

In his first claim, Muhammad contends that because Dr. Smith performed the two rectal examinations on November 3 and 19, 2015, allegedly without Muhammad's consent, these exams constituted use of excessive force, sexual assault, or forcible sodomy. Muhammad now

moves for voluntary dismissal of this claim without prejudice, and the court will grant the motion.[4] (Pl.'s M. Summ. J. 1, ECF No. 53.)

A motion to dismiss tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). "[T]he complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is plausible on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotations omitted). In conducting its review, a court must view the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotations omitted).

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). The Eighth Amendment to the Constitution prohibits the infliction of "cruel and unusual punishments" on prisoners, including the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986) (internal quotation marks and citations omitted).

To state an Eighth Amendment claim regarding his course of medical care, Muhammad must show, objectively, that he had a serious medical need for different treatment than he received, and subjectively, that the defendant knew of a substantial risk of harm that medical need presented and responded unreasonably to it. Farmer v. Brennan, 511 U.S. 825, 834-37 (1994). Under the subjective prong of this analysis, "officials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." Sharpe v. S.C. Dep't of Corr., 621 F. App'x 732,

---

[4] Dr. Smith moved to dismiss this claim based on Muhammad's failure to exhaust administrative remedies as required under 42 U.S.C. § 1997e(a). Muhammad states that after completing the exhaustion process, he raised the excessive force/sexual assault claim in another § 1983 action, Case No. 7:16CV00223, now pending.

733 (4th Cir. 2015) (unpublished). "Deliberate indifference can be established by showing that the medical treatment was 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Id. (quoting Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990), overruled in part on other grounds by Farmer, 511 U.S. at 837). This component requires proof of intent beyond mere negligence, errors in judgment, inadvertent oversights, or disagreements about the prisoner's treatment plan. Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837)).

Muhammad's remaining claim against Dr. Smith, alleging failure to provide appropriate treatment for bloody stools, fails to rise to constitutional proportions during the period at issue in this lawsuit (October 2015 through March 2016). Muhammad's submissions indicate that Dr. Smith did not ignore his complaints of bloody stools. The doctor placed Muhammad in a medical observation cell for a time, reviewed medical records, tested multiple stool samples, conducted other tests to check for evidence of blood loss and to rule out likely causes of blood in the stool, performed rectal exams to verify that neither the prostate nor hemorrhoids were causing the bleeding of which Muhammad continued to complain, and prescribed treatment for constipation as a possible contributing factor. In his medical judgment, based on test results and observations, Dr. Smith determined that Muhammad's overall condition did not present a need for additional testing, medication, or referral to a specialist during the period at issue.

Muhammad disagrees with the course of evaluation and treatment that Dr. Smith provided to him. He believes that Dr. Smith wrongfully delayed the initial examination for more than a month, improperly performed rectal exams to test for causes of rectal bleeding despite Muhammad's insistence that he did not have rectal bleeding, and denied his requests for referral to a specialist for a colonoscopy. These allegations suggest that Dr. Smith's choices regarding

appropriate diagnostic procedures and treatment for Muhammad's symptoms and condition were negligent or even that they constituted medical malpractice. They do not state a claim that Dr. Smith's course of treatment for Muhammad was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" so as to be actionable under the Eighth Amendment's deliberate indifference standard. Sharpe, 621 F. App'x at 733. Accordingly, the court will grant Dr. Smith's motion to dismiss and deny Muhammad's motion for summary judgment.

As a final matter, in Muhammad's motion for summary judgment, he also seeks to add claims against several Red Onion nurses: Linda Stump, Shaina Mullins, Janet Deel, Steffany Stallard, Wendy McCoy, and LPN Emily Cox. In brief, Muhammad alleges that each of these nurses observed blood in his feces on one or more occasion, but failed to place this information in his medical record. These alleged unreported incidents are said to have occurred on October 24, November 16, 18, and 25, December 2, 13, and 24, 2015, and January 2, 2016. As stated, the court will grant the motion and add these claims to the complaint.

Taking these allegations in the light most favorable to Muhammad, however, they fail to state any Eighth Amendment claim against these defendants. Even assuming that the nurses saw blood in Muhammad's feces and did not record the observation in his records, he has not demonstrated how these omissions adversely affected his medical care. Muhammad himself had reported to Dr. Smith these or similar instances of blood in his feces during this period of time. Based on these reports alone, the doctor ordered and conducted multiple diagnostic tests to rule out possible causes and determine the presence and extent of blood loss. Thus, the court finds no indication that the nurses' alleged omissions adversely affected Muhammad's course of medical

care for a serious medical need in any way. Accordingly, the court will summarily dismiss the claims against these nurses, pursuant to 28 U.S.C. § 1915A(b)(1), for failure to state a claim.[5]

III.

For the reasons stated, the court concludes that Muhammad's motion to voluntarily dismiss the sexual assault claim without prejudice will be granted; Dr. Smith's motion to dismiss must be granted; Muhammad's motion for summary judgment must be denied; and all amended claims must be summarily dismissed under § 1915A(b)(1). An appropriate order will issue this day.

The clerk will send a copy of this memorandum opinion and the accompanying order to Muhammad and counsel of record for Dr. Smith.

ENTER: This 3rd day of November, 2016.

*/s/ Conrad*
Chief United States District Judge

---

[5] The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1).